We will hear argument next in No. 1400, Medtrica Solutions against Cygnus Medical. We will hear argument next in No. 1400, Medtrica Solutions against Cygnus Medical. Mr. Leiberger. Good morning, Ben Leiberger here on behalf of Cygnus Medical. We submit that the District Court erred in construing the term weakened line in the claim for the O23 patent and in finding non-infringement on summary judgment. Now the District Court construed the weakened line to be a physical identifiable segment of material that is less strong than the surrounding material. We submit that the District Court did not give this term its plain normative meaning as required by Phillips. The appellees and parties agreed that the weakened line was given no special definition in the patent. The technology is simple and the words involved are common as admitted by the appellee. Now if you look at the words in the claims in the patent, the claims require a portion adapted to be opened comprising a weakened line. The specification describes how this portion adapted to be opened may comprise a line of weakness that extends laterally across both sidewalls in proximity to the top peripheral seal. Can I ask this? It seems to me that there are at least, before you know anything else within the context of the patent, two conceivable ways of thinking about the weakened line. One is that there is an actual difference in the physical property of the material running in some sort of one-dimensional direction, which I think is roughly what the District Court said, although oddly enough didn't say anything about one-dimensionality at all. The other is something I gather that you say that the same exertion of force should produce a tear along this line. And that's what the notch does. So as a matter of meaning wholly outside the context of the patent, let's assume that there are two different ways of looking at it. Why, though, doesn't the specification make absolutely clear that the inventor here was describing notches as something quite distinct from whatever was going on between the notches, namely the weakened line? And why doesn't that resolve the matter in favor of what the District Court said, putting aside the absence of one-dimensionality, which can't possibly help you? Well, I think it is resolved in the patent. I mean, we give specific examples of what this could be. It could be scoring. It could be perforations. It could be notches. And I think what appellees are trying to say is the material itself has to be weakened in some way. And I think if you look at those examples, it's really showing that that's not necessarily the case. A perforation and a notch really function the same way. They just put a hole in the material that, as appellees discussed, create a stress concentration. They may both achieve greater ease of opening, but I don't see how that takes away from the apparent implication of the specification to distinguish the weakened line from notches on one or both ends of the front and back surface. Yeah, I think the weakened line can include any of those. I don't think notches was supposed to be something separate. I mean, I think anything that allows you to use less force in opening this. But these specification passages talk about a weakened line plus notches or without notches. Why doesn't that discussion distinguish the two so that notches alone do not create a weakened line, even though they enable tearing with the same exertion of force that might not work without a notch? Well, I think it's discussed in two sections of the specification. I think it says in one portion it may also include notches, and in one other section it just said it preferably includes notches. So I still believe that that could be a separate embodiment. I mean, anything that allows you to get through these rigid sidewalls with exerting less force than would require. I mean, as the declaration we submit said, you cannot tear through the sidewall with your hands alone. So whether it's a weakened line by scoring or a notch, I mean, there's something there that allows you to tear in a linear fashion across the top. And there's nothing in the specification that, even with these examples, we shouldn't be limited just to those. I think the claim is broad enough to cover any way of tearing along the top portion of the pouch in a linear fashion. I think one point you raised was, you know, with the court's construction here in other areas, you know, the court only provides a segment of material. And they've cut, they've written the linear element out of the construction entirely. Right, but that's an argument that it was too broad, and you don't gain anything by arguing for a narrowing of the construction. That everything the district court said would be okay if only the district court had also said that segment has to be one-dimensional. Right, but I think for the purpose of our patent and invalidity challenges later, I mean, we don't want this to cover, potentially cover the embodiments that were also in the spec that weren't included, such as a hole, you know, arguably with a segment of material that's not linear. Someone could make an argument that this covers a hole and not a linear tear line. We believe the district court also erred in requiring that this line be physical and identifiable. And I think it's clear in the claim construction order that by physical and identifiable, the court said that Cygnus limited its invention to a pouch with a visible weakened line. And there's really nothing in the specification or anywhere in the intrinsic record that imposes this requirement. In fact, as we pointed out in our brief, if you look at figure one, which shows the weakened line, it's shown as a dashed line. And the manual patent procedure actually says that a dashed line is a hidden line. Therefore, it does not need to be visible. And there's nothing else in the record to the contrary. Am I remembering right that the references to visible or discernible did not play a role in the determination of non-infringement? That was part of the claim construction, but that was no part of the reason the district court gave for saying these accused products are outside. That's correct, yes. The district court found that their notches were physically identifiable. We submit the district court also erred in finding non-infringement. There was genuine issues and material facts with respect to literal and doctrinal equivalents. We submit that in construing the claims incorrectly, that influenced the decision on non-infringement. So therefore, on that basis alone, it should be vacated. However, even under the court's construction, we believe a reasonable jury could have found infringement both literally and under doctrinal equivalents. What's your answer to the prosecution history estoppel point or the Johnson & Johnson point, which in this case I think amounts to the same thing, which is there's an estoppel by amendment, the presumption under FESTO is that everything that was covered before the amendment is surrendered with the amendment in the absence of some special reason that you really couldn't have reasonably anticipated this example. The specification makes it perfectly clear not only could you have, but you did because it talks about notches. I think in claiming a weakened line, that was intended to include notches, so I don't think we were giving up on notches. Right, but this is an argument that takes as an assumption, as you said, that the district court was right about its claim construction. Right. Let's keep that fixed. Okay, well I think with respect to the arguments for vitiation and prosecution history estoppel, I think with respect to estoppel specifically, if you look at the file history, the weakened line was already in one of the asserted independent claims. It was originally in independent claim 13, which became 10 upon issuance, so this was already in the claims. It was not added to claim 10. The only element that was added to every claim was that the pouch was adapted to stand upright. So that was added to every claim. Claim 1, weakened line, was added to it, but it essentially made claims 1 and 10 have the same scope. So I think for that reason, this was not something that was added by amendment, and if you look at the prosecution history, the real argument was that the combination of elements was not obvious and there was no motivation or reason to combine. So although we discussed the weakened line element, I think the real arguments were about the combination, and we already had that element in there. And then with respect to vitiation, I mean, the court indicated that we were trying to cover anything, any form of a pouch that is adapted to be open, and that's simply not the case. We were still trying to make an equivalence argument based on this tear line, this linear element in the accused product, and we were not trying to expand the scope of the claims to cover any pouch adapted to be open. For example, we weren't trying to cover round straw openings in a juice box, as was discussed in the file history in the specification. Now with respect to the no evidence argument, we believe there was sufficient evidence in the record to at least raise a genuine issue of material fact, and those were the product itself, which was cited in both parties' briefs. A genuine issue of material fact on what? With respect to non-infringement, both literal and doctrinal equivalence. And also, Apelli's own admissions throughout the briefs and expert report, as well as the declaration and documentary evidence submitted by Cygnus. Now for literal infringement, we had the product itself, which we think alone was enough to defeat summary judgment. The only issue here, they had admitted to every other claim in the patent except for a weakened line, and the court had already found that the notches were physically identifiable, so the only issue left was whether there was a segment of material that was less strong. So we believe, given the product, which was in evidence, a reasonable juror could have compared the claims to the product, and simply put, tearing along that line and realizing that it was easier to tear along the notches could have made the conclusion that it was less strong than surrounding material. And that, taken together with Apelli's admissions throughout their briefs and in their expert report, that their notches reduced the amount of force necessary to tear open the pouch. And we think that raises a genuine issue of material fact on whether this pouch is weakened. Further, we had an inventor declaration, which was not considered by the court. We believe it was disregarded improperly. But the inventor reviewed the pouches and described how the pouches opened and indicated that he could not tear where there weren't notches. And when he wanted to open it, he had to tear between the two notches across the top along a weakened line. We believe the evidence also supports doctrine of equivalence. The notches perform the same function, which is to facilitate opening the pouch in the same way by creating a linear tear line, and has the same result of opening the pouch. With respect to same function, the Apelli's admitted, even in a brief... Most equivalence claims stand or fall on the way element, since function and results are awfully similar and you'd hardly be in the game if you didn't have those. How is it that there's sufficient testimony that this was in the same way? One is an actual physical difference in the material sitting between the ends, and the other is a technique that allows the same exertion of force to achieve what without the notches it would not achieve. I think function and way were found by the district court, and there's admissions from Apelli's on those. With respect to way, we believe at least the Sweeney Declaration supports this, where he found in his manipulation and use of the product that it was weakened along the line between the two notches, and he was unable to completely separate the top portion without tearing the package between both notches, meaning the area between those two. We think that is evidence of the way. You have only two minutes left of your rebuttal time. Perhaps you want to restate it. Thank you. Thank you. Mr. Berman? Good morning, Your Honors. There are two issues principally before the court. One is claim construction. The other is summary judgment of non-infringement. Both of them are de novo. Your Honor was correct in taking a look at the way that the claim was constructed. The language of the claim itself says weakened line. Weakened line has meaning to it. It's a noun modified by an adjective, so there has to be a line in the package that is weakened. The specification makes very clear, as Your Honor pointed out, that there's a difference between notches and the weakened line. So it's clear from simply the intrinsic evidence, by taking a look at the specification and the claims themselves, that weakened line is different from the notches. Prosecution history is spot on. What about his point about claim 10? I guess it was claim 13 originally, which became claim 10. I think in the issued patent, always have this element in it. Claim 10 had the broad language adapted to be opened, and it was later on amended because of two references. It was amended because of a copy. Was there some original claim that had the weakened line limitation that was added to claim 1 or some variant of that? I can't tell you, Your Honor, not to my knowledge. Irrespective of that, we have to look at the prosecution history based upon its public notice content, and if you look at the prosecution history where the patentee distinguished the Cox and the Dennis references, the claim was amended to include the weakened line limitation, and the patentee specifically pointed out to the patent office that weakened line was amended to distinguish over the Dennis reference. The Dennis reference, as you might recall, was a goose tag that had a singular opening in there that was frangible, and the claim was amended to specifically include the weakened line. This is consistent with the specifications where the specifications spoke of a variety of different ways to adapt the package to facilitate opening, one being a hole, one being a weakened line, and the other just being the baggy, resealable, unresealable top seals, and the claim was specifically amended and added and distinguished over those references. In addition to the intrinsic evidence, and in fact there's never in the prosecution history, never in the specification does the patentee ever either point out in the specification or discuss during the file history that notches alone could meet the weakened line limitation. It certainly had the opportunity to do so, but it didn't never mention it, never said it. It's an afterthought. In addition to the intrinsic evidence, which the judge relied upon, the extrinsic evidence, which is consistent with that definition, including the dictionary definitions as well as the testimony of Dr. Singh, uncontroverted, unrebutted, also is consistent with weakened line having specific definition. If we were to look at extrinsic evidence and put aside for one minute whether particular extrinsic evidence like websites were reliable or proper, and also if we were to disregard the specification for a minute, because we are talking about extrinsic evidence, why is it not at least one reasonable way of talking to say that the portion of the package between two notches is weaker than it would be without the notches because a human being applying exactly the same force, exerting the same force, will be able to tear one but not the other because the notches concentrate the identical exertion of force. I'll follow your question. The problem with that hypothetical situation is it misplaces where the notches are. If the notches are in the sidewalls of the pouch, the weakened line must be in the front and back walls of the pouch. So if you're only looking at the notches that are in the sidewall, the weakened line has to be in the front or back sidewall panels, not right outside the sidewall panels. I'm sorry, doesn't the force that is concentrated at the tip of the notch in the sidewall as you start to exert it propagate as the sidewall merges into the two front and back walls? I think I do that all the time when I open suit packages. No doubt. When you concentrate the stress in that notch and there's a tear that propagates along the front and back sidewall panels but those back sidewall panels are not weakened, the claim calls for there to be a weakened line. It's not the tear line that propagates along. And again, you're speaking, ignoring the specification, which is completely contrary to that and the extrinsic evidence that we have. So I think under any, let me reach the issue of identifiable. First, invisible. Visible was, the court mentioned it in its order, but again this is a de novo review. And in applying the evidence to the issue of summary judgment, visibility wasn't considered. With respect to identifiable, the weakened informs that it's identifiable. So unless you, if you have a bag that has no notches, how are you going to tell there is a weakened line or not? It has to be identifiable. And with respect to the physical segment issue, I think the court is correct. But I'm sorry, you could tell if there was a notch and there's nothing in the specification, let me say it more affirmatively, the specification affirmatively describes adding notches to a weakened line, to put it in terms favorable to you. I'm sorry, I missed the question. The specification certainly distinguishes between notches and a weakened line. And so you're saying that the specification covers a pouch that has a weakened line, but no notches? Yes, the specification is absolutely clear on it. This is a preferably termination. And that wouldn't be usable if you couldn't see it. You don't have to see it. It has to be identifiable. Or feel it. Well, you might not necessarily be able to feel it. I'm trying to figure out which senses. The fibers in the plastic could be disrupted by a laser, for example, and so that as you tear, because the line is weakened, it helps guide the tear along. So identifiable is not necessarily through your senses. It could be microscopically identifiable, but it has to be. But that would have nothing to do with whether it was usable by the user or everybody's going to tear it at the top anyway. Probably. I'd imagine so. Perforation argument. It's a segment of material. So once in the segment of material there are perforations, whether they pass through or not, that segment of material forms a weakened line. Scoring is not passed through. When you score something, it doesn't have to go all the way through. And, in fact, perforations don't all have to go all the way through. They could be shallow. In fact, the one point that the specification makes, and, in fact, Mr. Sweeney makes, is that if the bag was perforated all the way through, it would be decontaminated out of the bag. So when they're talking about perforations and lining, it's shallow perforations and lining. A person of ordinary skill in the art would recognize that. On the issue of summary judgment, there simply is, under any claim construction that's a reasonable claim construction based upon the record, there's simply no evidence that would support not claiming. By the way, do you agree that the district court mistakenly omitted some reference to one-dimensionality in its claim construction? When I read the district court's claim construction, the notion of line does not come to mind because there's nothing in there about one-dimensionality or linearity or the shape of the area that is weakened. You're correct. When we say mistake, I want to clarify that because in the construction that Medtrika offered, we offered it's a long, linear line. And the judge... A long, linear line? A long stroke. A stroke with a pen or an instrument that was linear along. The court, in its own good knowledge, decided not to add that as a limitation of claim. You're correct. It's a little bit more helpful to the defendant in the long run. But in our case, it's a physical segment of the jail. Whether it was linear or not, we believe that the specification calls for it to be linear. There is no other explanation set forth in the specification of the prosecution history or any other evidence that suggests that it's not linear. But I imagine, Your Honor, it could be inundating. That's why I kept talking about it as one-dimensional, at least locally. Yeah. As I said, it could be that way. I don't believe that the specification... I didn't say straight line. Instead of a straight line. That's correct. With respect to the evidence on summary judgment, there's only two pieces of evidence that was really presented to the court. And one nonsensical piece of evidence. What Cygnus urges is that the product itself, our client's product itself, constituted evidence to defeat the motion for summary judgment. I think that just begs the question, A, because our product simply has notches, and B, there's no evidence whatsoever that was submitted that indicated that any portion of the front and back sidewall panels between the notches was weakened in any way. Number two, the Cygnus submitted web readouts of three or four scientific articles. No expert testimony. No explanation of those articles. Nothing whatsoever. Our articles were there. If you actually took time to read the articles, the articles talked from a technical standpoint of how notches create concentrated stress and help initiate a tear. The third piece of evidence is the testimony by declaration of Mr. Sweeney. And Mr. Sweeney raises a number of conclusions in his declaration. It's based upon his personal knowledge of tearing a bag. No scientific testing. Nothing of that nature whatsoever. There is nothing in his declaration that supports the claim that there was something weakened in the back and the front of the bed. Nothing in his declaration that supports that. And conspicuously absent from his declaration is any evidence to the extent there ever was any line that it was in the front and back sidewall panels. I believe that the record is absolutely clear that the district court's definition of weakened line is as set forth by the district court. It requires something physical, something identifiable. It requires a line. It requires that the front and the bed have a deformed, weakened material. There's absolutely no evidence in the record that would support any claim whatsoever of infringement whether literally or under the doctrine of equivalence. Thank you. Mr. Weaver, you have two minutes and two seconds. Thank you. I just want to point out the amendment I was discussing was originally Claim 13, which became Claim 10. You can find it at A123 through 125. Another point I want to bring up, there was a lot of discussion about the side seals being something different. One of the problems with statements like that is that you may know what's on A123 and 125, but it's not in here. I know that people assign appendix numbers to large volumes of material and then by our rules we say, submit only the stuff you cited. Those aren't in here. Is that something we could submit to the court? I think we can find them in the prosecution history. Thank you. There was discussion about the side seals and the notches being the side seals versus the front and back panel. I just want to point out that Apelli submitted a declaration of their principle. It's at A380. It discusses how this pouch is manufactured. It's really just two front and back pieces of plastic that are overlaid over one another and then heat sealed on the sides. Really, the side seals are the front and back. There's not a separate material or anything added to the side. It's literally just the edges of the front and back. We would submit that the side seals are the front and back. As Your Honor pointed out, once you tear through the side seal, now you are in the front and back. We believe that element is met. There's also been some discussion in the briefs and just now about our lack of expert. I think it's pretty clear in the case law. It's not required to have an expert for infringement. We believe that a jury could have applied the technology to the claims in a simple case like this and found infringement without an expert. Thank you. Thank you. The case is submitted.